Ms. Carbide? Good morning. My name is Sakina Carbide and I represent the petitioner. Please speak up so that we can hear you. My name is Sakina Carbide and I represent the petitioner in this case. I have represented the petitioner for many several years prior to the federal appeal here. My client entered the United States in April of 1998. He married his citizen spouse in April of 2001. This case has had a torturous history, no doubt. Since 2001, he has attempted to legalize his status. He filed what is called an I-130 petition back in April of 2001. The petition is based on his marriage to a citizen in the United States based on a good-faith marriage. That petition was granted. Because he was married for less than two years, the petition then is granted conditionally and grants him conditional residence in the United States for two years, which he then needs to renew. But then later, he doesn't, neither he nor his, nor Tammy appears by 2006 at the interview for the I-751 and it winds up getting denied. In the meantime, Tammy has changed some things and we've got the first wife, Bajaya, I'm not sure how she pronounces her name, but anyway, she says she's still married to him and we wind up in October of 2010, at which time the immigration judge sets a schedule for the case. The hearing isn't until August 23, 2012, well more than two and a half years later. He doesn't, or about two years later, I'll say, he doesn't get the documents in on time. Yes, ma'am, however... And the immigration judge says, look, we've got to move this, I'm not going to give you another continuance. I'm having trouble seeing why that's an abuse of discretion. First of all, just for the record, there's nothing in the record that the first wife said that they were still married. There's an allegation that's been pled by the government in their brief. There's nothing in the record. There's never been a sworn statement that's been presented. There's never been any other evidence that's been presented. As a matter of fact, and I'd also like to clarify that the second 751, the second petition to remove the conditions, was filed back in 2007. April 11, 2007, but before that, in 2003, an inspector stops the first wife, she has documentation from the petitioner, and she says she's still married to him. And now, whether she's there in person or has executed an affidavit is perhaps debatable, but the government has reason to wonder what's going on. Nonetheless, they get the second I-751. They deny that, citing the relationship with the first wife. There are all kinds of weird problems with the second wife, I guess. This is also the same person he's now suddenly saying is abusing him? He has been with the same wife since 2001. They were separated for a brief period of time between 2004 and 2006. That was disclosed. A brief period of time? Three years? They were separated, they were together, they were separated, but at the time, they could not have pursued a bona fide petition before the Department of Homeland Security. That was disclosed to the Citizenship and Immigration Services when the petition finally came before them for interview back in 2010, that yes, they had been separated for a time, which often happens with marriages. Well, let me ask you this. What evidence was there that Geary had been subjected to abuse by his wife? What was presented? This is not a battered spouse case, and there was no evidence presented as far as him having eligibility for Wawa benefits or something of the sort. The argument as far as the abuse went back to the control that his wife has had over him since 2001. She has been the keeper of all of the marital records. She has been the one that has controlled the appointments, even with my office, with the phone calls, with basically everything that he has done in his life, with the money that he makes, with the schedule that he keeps, how they eat dinner, when they eat dinner. Basically, she's been the one that has set the entire foundation of the marriage. Pardon me. She also has kept all of the photographs, the leases, the bank records. Are you saying she did not permit him to get fingerprinted? As far as, and the fingerprinting is another issue, and I'm confident that my client was diligent in that regard, and then I can explain that. But as far as the documentation for the marriage, she kept that. She always kept that. There was never a single- So are you saying like bank accounts and bank records and the lease and things like that, you didn't have access to that and couldn't subpoena that information? I did not have access to that. There's not a subpoena procedure. And he couldn't do anything? Why not a subpoena? There's not a subpoena procedure because she is a party to the situation. There's not a subpoena procedure, and my understanding was- You can't get a subpoena even if you're claiming there's been abuse by a spouse in the immigration court? Yes, I've never heard of- If you're being barred, you can't get a court order? I've never, yes. I've never heard of such a procedure at the immigration court level. Did you ever tell the immigration judge that there was documentation that you believed in your professional judgment to be available that was being withheld by the wife? Absolutely. There was an off-the-record conversation back on the date of the individual hearing where my clients were out in the hall, and I did make that clear to the judge. But see, the judge- I mean, you show up with these 800 pages in August of 2012, so apparently there was some way to get the records, but the judge isn't brought into the game. The judge isn't told, you know, well, we can't meet your 45 days before the merits hearing deadline. Again, forget about the biometric request, but the 45 days for the information. It just isn't the way the process can work. I understand in the- Which you yourself actually seem to have said at the August 23rd hearing. You said, I realize this is very irregular, blah, blah, blah. Yes. I've been doing immigration work for 21 years. That's primarily what I do. And I did realize that that was irregular because of the circumstances. I mean, even a motion with the judge before that 45 day period saying, we are exerting ourselves to collect this data, we can't, you know, she's stonewalling it, something. Because otherwise the judge is just going to think you're dragging your feet. Your Honor, in hindsight, absolutely I agree with you. I get calls from Mr. Geary saying, we're coming. We're coming to your office today. I have the documents. I get a call from him saying, I'm not coming. I can't make it. I get a call from him saying, she's going to forward the documents to you by FedEx herself. I get a call saying, she didn't do it. I'm relying on them and moving along. And in hindsight, in every case, even the ones that I've prevailed on, there's always something that I could have done better. There's always something that I could have presented stronger or argued in a more competent fashion. Looking back at this file, I have no doubt that there was plenty of things that I could have, should have, and would have done had the circumstances not snowballed the way that they had. And I have known Judge Giambastiani for many, many years, tens of, dozens of years. And I have a very good working relationship with Judge Giambastiani, and I felt knowing her that she would understand the circumstances and the situation, and that we would be granted a brief continuance. This has been delayed by the government for years on end, as far as adjudication of the 751 petitions. There's nothing in the record showing that there's any kind of a sham marriage. There's nothing in the record showing that there's any kind of fraud with the first wife. Everything was disclosed as far as the separation. And my feeling... Okay, you might want to save a little bit of time for rebuttal. So, and I do think that you made that point earlier. So we'll give you a chance to rebut. Thank you, Judge. Ms. Sherman. Good morning, Your Honor. It's Jessica Sherman on behalf of the Department of Justice. The only issue before the court today is not whether the marriage was fraudulent, but whether the immigration judge properly exercised discretion in denying the continuance. Here the continuance was made at the close of the merits hearing to allow Geary to submit over 800 pages of documents without any explanation as to why he waited until the day of the merits hearing to make the request. Under these circumstances, he has not shown good cause. He requested the hearing as soon as possible and was granted this special request and ordered to file all documents or all applications for relief 45 days in advance of hearing and nothing was submitted. And then he walked into court with over 800 pages of documents and requested a continuance. He had ample time to prepare for his case and didn't submit anything. So what kind of evidence, just for my edification, did the government have about the first wife? I believe in the record, at the end of the record, there is USCIS's denial of the I-751, but it's a de novo hearing before the immigration judge. And because Geary didn't submit any applications for relief, DHS didn't submit any rebuttal evidence. But the evidence that USCIS relied on is not in the record. There's just the statement from USCIS denying that. But that's fine because it is a de novo hearing before the immigration judge. And had Geary submitted his application and supporting documentation 45 days in advance of trial, the ICE attorney could have submitted rebuttal evidence. This case is a lot like this court's decision in Juarez where the court found that where the alien did not submit applications and then requested a continuance less than a week before trial, the immigration judge denied the continuance and deemed the application abandoned. And this court found that it wasn't an abuse of discretion to deny the continuance under those circumstances. The court should similarly decide here that there was no abuse of discretion. With regard to Geary's claims that he was an abused spouse, there are special provisions for the waiver to waive the joint petition requirement for battered spouses. And he didn't apply for relief under that special provision. If he was truly unable to obtain these documents, he could have applied for relief under this special provision for battered spouses. So if somebody's having trouble collecting evidence, are there any measures the immigration judge can take to compel evidence? I'm not aware of any, Your Honor. But had Ms. Carbide submitted a motion to that effect, giving the immigration judge notice that there was issues obtaining the documents and then the immigration judge denied the continuance, that would be something for the court to consider. But here there was no motion made until the day of the merits hearing. And actually, there was no evidence before the immigration judge. There was no allegations of abuse or control before the immigration judge. That didn't come until the appeal was filed with the board. And there's no evidence supporting this allegation of abuse. The only evidence, or the only time this appears is in the brief to the board. Statements of counsel are not evidence. There wasn't an affidavit for Mr. Geary setting forth these facts for the board to consider. So I'm still a little unclear on what authority the immigration judge has to issue, to authorize a subpoena. Is there or isn't there? Your Honor, I do not think that there is subpoena authority in the Immigration Court. But that's certainly a factor. So how does one get documents like the lease that she was making reference to? You know, I mean, you could call the leasing officer, go take individual measures, call the electric company, gas company. But again, if this information had been presented to the immigration judge in weighing the discretion. I understand. You're saying they never even said that. Right. So the immigration judge could have theoretically given time to have this happen, and you could show that you tried, or you emailed the electric company, or you went through all these changes and couldn't get it. Correct, Your Honor. But these allegations were never made before the agency. There's simply no evidence of abusive discretion under these circumstances. Does the court have any questions? Thank you very much, Your Honor. Thank you. So you can have a final minute in this court, Biden. The denial decision that the government refers to is not evidence of anything. It's a self-serving statement by the government and not supported by any documentation in the record. The government very well could have submitted a sworn statement from the first wife if it existed. And the burden is on the government to establish removability. It is not the petitioner's burden to establish that he's not removable in the situation the way that the charging documents have been filed. As a matter of fact, both in writing and orally, my client did not concede removability. My client stated that he was not removable based on the charging document. My client stated that he has a bona fide relationship. His wife was in court with him for every hearing. His wife was with him at every interview except for the time that they were separated. So the board, however, says in its November 15, 2013 decision, as discussed by the immigration judge, the respondent conceded the central allegation supporting his removal charge under Section 237A1D1. But the record does not reflect that, Your Honor. That is a statement in the decision. The central allegation must be that he was born someplace else, not the United States, that he overstayed visas. The allegations that are in the NTA that was filed by the government states that he was adjusted to a permanent residence on a conditional basis, and that residence was terminated because he failed to establish eligibility as a good faith marriage. He denied that, and the government never proved it. As a matter of fact, they never... He didn't deny that he didn't show up for the interview, though. Well, that was the first 751. The NTA was not filed based on the first 751. It was abandoned and closed. It was after the second 751 that was filed that the file was actually referred over to the immigration court. And the 751 itself is in the record. It appears at page 65... It appears at page 64 and 65. It was submitted very early on into the court. It's just a matter of the supplemental documents. Okay, but these are the... This takes us back to the 800 documents. I think we need to... No, no, no, it doesn't. Well... The 751 is the actual petition for relief. No, I understand that, but I'm looking at the whole course of events from the notice to appear forward and his request for the August 2012 hearing. Sure, so after... I think we will look at the record and we will take the case under advisement. So thank you very much.